## BORDERLAND HARDWARE CO. v. SAENZ et ux. (No. 8022.)

Court of Civil Appeals of Texas. San Antonio.
Oct. 3, 1928.

W. G. Weaver, of Donna, and Cameron & Epperson and J. F. Carl, all of Edinburg, for appellant.

Neal A. Brown and Geo. P. Brown, both of Edinburg, for appellees.

SMITH, J. Antonio Y. Saenz owned three lots in the city of Mercedes, in Hidalgo county, as well as his home, a store building and stock of merchandise, and an equipped and going filling station, situated on said lots. He also owned two automobiles. These properties, some of them incumbered, constituted his whole estate. He was a married man, and lived with his wife in their home. He owed no debt of any kind to the Borderland Hardware Company, located at Donna.

Fernando Saenz, aged 19, was a younger brother of Antonio, and was employed as a clerk in the Donna store of the Borderland Hardware Company. The managers of the hardware company suspected Fernando of stealing from the company, through the process of pocketing the cash received by him in making sales of the company's goods. They hired a detective, who, with stool pigeons employed by him, laid traps for young Saenz. They claimed that by these means they verified their suspicions, and obtained from the boy a confession in which he acknowledged numerous specific acts of theft, and a general admission that by the process mentioned he had taken as much as $1,000 from the company. There is no evidence that Antonio had any knowledge of his younger brother's alleged defalcation, or of the subsequent discovery thereof.

The detective then took charge of Fernando, put him in an automobile, drove to Mercedes, and there confronted the elder brother, Antonio, told him of the boy's plight, and demanded $1,000 to save the latter from prosecution and a penitentiary sentence. Antonio had no money with which to meet this demand, and pleaded that he could not raise that sum. But the situation appealed to him —alarmed him, of course—and he yielded to the detective's proposition that he go with the latter to Donna and there make some arrangement with the hardware company's

management whereby he could save his younger brother. Accordingly, he and his wife accompanied the detective to Donna, and there the two executed deeds and bills of sale conveying the whole of their estate to the hardware company. The value of the personal property so conveyed was fixed by the jury at $1,109, and a rental contract lost by Saenz by reason of the conveyances was of the value of $280.25. Saenz thus yielded up to the hardware company personal property of the value of $1,389.25, together with real property consisting of three lots and his home, store building, and filling station situated thereon. As Saenz was under no pecuniary obligation to the hardware company, the only possible purpose of the conveyances was to save the grantor's younger brother from the threatened prosecution and imprisonment.

Shortly after these transactions, Antonio Saenz and his wife brought this action against the hardware company to recover the value of the personal property, and to cancel the deeds conveying the real property, and did so recover in a jury trial. The hardware company has appealed.

The trial judge charged the jury that—

" 'Duress' is that degree of constraint or danger, whether actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind of the person concerned with said threat of danger or constraint. It consists not merely in the act of imprisonment or other hardships to which the party was subjected, but in the state of mind produced by those circumstances and in which the act sought to be avoided was done."

And the jury found, in response to the one special issue submitted under the foregoing definitions, that—

"At the time of the execution of the deed, by the plaintiffs, to the defendant, to the real estate described and involved in this suit, and the execution of the bill of sale to the two automobiles involved in this suit, the said Antonio Y. Saenz's mind and will was overcome by a threat then made by C. A. Hodgson, to the effect that the Borderland Hardware Company would send his brother Fernando Saenz to the penitentiary if the said Antonio Y. Saenz did not pay to the defendant a debt claimed by defendant to be owing it by the said Saenz."

Appellant contends in its first proposition that the threat to which appellee yielded was a threat of a lawful prosecution, and that it therefore could not constitute duress; that duress may arise only from a threat of unlawful prosecution. Appellant requested the court to so instruct the jury, but the court refused the request, and appellant complains thereat.

The duress in this case was not practiced upon the person accused of crime, but upon an innocent person. It did not operate upon one who yielded thereto in order to escape the consequences of his own crime, but upon one who, though himself innocent of wrongdoing, was induced to part with his all to save his younger brother from prosecution, imprisonment, and perhaps death, as he contemplated in his ignorance to be the possible consequence of the crime charged to his brother. The law distinguishes the position of the two in a suit to avoid a contract executed under duress. For, while it may be true that an accused person cannot avoid contracts executed by him under threats of lawful prosecution, a third person executing contracts under duress to prevent the prosecution of a near relative may avoid such contracts, regardless of whether the threatened prosecution was lawful or unlawful. 13 C. J. 404: Gray v. Freeman, 37 Tex. Civ. App. 556, 84 S. W. 1105.

This case comes very clearly within the latter rule. Appellee is an industrious but ignorant Mexican. He was suddenly confronted by an armed and badged American detective, who claimed that appellee's younger brother, 19 years old, employed in another town, had been detected in the theft of $1,000 and was about to be prosecuted and sent to prison. Appellee was frightened; and in his fears he visualized the prosecution, imprisonment, and possible execution of his young brother, and while he had no money with which to meet the detective's demand for $1,000 to cover the claimed defalcation of his brother, he readily pursued the advice of the detective to go to Donna and do whatever was necessary to save his brother. The interview he had with the detective and appellant's managers at Donna resulted in appellee's conveyance of all his property, including his homestead, for the sole consideration of the release of his brother from what was made to appear to him as an imminent and terrible punishment. He yielded to the threat, because in his terror for his young brother he was deprived of all semblance of calm judgment and had no will with which to combat that of his adversary. In this condition he unhesitatingly conveyed all his worldly goods to appellant, whom he owed nothing whatever. The law will not lend its aid to enforce such contracts, and equity will unhesitatingly void them. We overrule appellant's first proposition.

In its second and third and fourth propositions, appellant questions the sufficiency and accuracy of the trial court's definition of "duress" as applicable to this case, and complains of the refusal of the court to give additional requested instructions upon that issue. We overrule these propositions. The charge given, which has been set out herein, substantially presented the case made. We also overrule appellant's fourth, fifth, eleventh, and twelfth propositions, questioning the sufficiency of the evidence upon the issue of duress. The evidence was ample to sustain the jury's finding upon that issue.

The testimony was that a trap was laid

by appellant for the detection of Fernando Saenz in his defalcations. Certain persons were employed to make purchases of Saenz and pay him therefor, and these transactions were checked to ascertain if the proceeds from these particular sales were accounted for by Saenz to his employer. This device is a familiar one, employed by individuals, and particularly by the government in recent years, in discovering and proving violations of the law. The persons employed to make such purchases are commonly, universally known as "stool pigeons." Appellee's counsel, in examining witnesses in this case, referred to the persons so employed in the transactions under consideration as "stool pigeons." Appellant complains of that use of that term, and assigned error thereon. We overrule the assignment, if for no other reason than that appellant's vice president and general manager, in his testimony, so designated those individuals. This disposes of appellant's sixth proposition.

We think it immaterial that some of the personal property conveyed by appellee to appellant was incumbered to secure appellee's obligations to third parties, or that appellant did not take physical possession of some of that property. By the forced conveyances appellee was deprived of those properties, and appellant obtained title thereto, and it will be assumed that appellee's prior obligations thereon remained to bind him. We therefore overrule appellant's seventh and eighth propositions. Appellant's ninth and tenth propositions are not briefed and will not be considered.

The judgment is affirmed.