## ROBERTSON v. SHINN GROCERY CO.

### No. 7493.

Court of Civil Appeals of Texas. Austin.
Nov. 19, 1930.

Appellant's Motion for Rehearing Overruled Dec. 10, 1930.

Appellee's Motion for Rehearing Overruled Dec. 10, 1930.

Wayne Davis, of San Antonio, W. K. Hopkins, of Gonzales, and Black & Graves, of Austin, for appellant.

E. B. Coopwood and C. F. Richards, both of Lockhart, and Woodward, Hart, Gay & Hart, of Austin, for appellee.

BAUGH, J.

The Shinn Grocery Company, a corporation, sued the appellant on two promissory notes for $4,550 each, dated September 1, 1926, and for foreclosure of a deed of trust on approximately 700 acres of land in Austin county, Tex., dated April 1, 1927, given by appellant to secure their payment. Appellant denied consideration for the notes and the deed of trust; pleaded failure of consideration, illegality of consideration, and duress. The case was submitted to a jury upon special issues, and upon their answers thereto judgment was rendered for appellee for the full amount of the notes and for foreclosure of its lien, from which Robertson has appealed.

The following facts appear: The Shinn Grocery Company had its place of business at Lockhart, Tex. W. E. Shinn was president and a director. J. H. Robertson was secretary-treasurer, general manager, and a director, and a brother-in-law of Shinn. O. B. Robertson, Jr., son of appellant, was a son-in-law of Shinn, and a bookkeeper for appellee during 1926. Some time in April or May, 1926, an audit of appellee's books showed that the said O. B. Robertson, Jr., had misappropriated about $9,000 of its funds. This he admitted to J. H. Robertson. O. B. Robertson, Jr., was not able to make good his default, and, after some negotiations between his father, appellant here, and J. H. Robertson and W. E. Shinn, his father executed the notes sued upon, and later executed the deed of trust. O. B. Robertson, Jr., was indicted by the grand jury on April 5, 1927, a few days after the deed of trust was executed, has since been adjudged insane, and was in the United States Veterans' Bureau Hospital at the time of the trial of this case.

It appears that the appellant at the request of his son first took up with J. H. Robertson the matter of his son's shortage, with the knowledge that his son had committed a criminal offense. It is clear that appellant, J. H. Robertson, and W. E. Shinn all realized that, if the matter of the shortage were brought to the atention of the grand jury, O. B. Robertson, Jr., would probably be indicted. It is likewise obvious, we think, that the motives actuating the conduct of appellant throughout were to prevent, if possible, the criminal prosecution of his son. Though the relationship of W. E. Shinn and that of J. H. Robertson to O. B. Robertson, Jr., was of such personal nature that they likewise desired to protect him from exposure, and to avoid his prosecution, yet, in so far as the corporation was concerned, the matter of primary concern to its officers was clearly, we think, to save the company the loss of the $9,100 misappropriated, for which the notes and deed of trust were given.

Issue No. 1 submitted to the jury was: "Did the plaintiff, Shinn Grocery Company, or any of its officers, agents or employees, acting in its behalf, at the time of or prior to the time the defendant executed the two notes sued on in this cause, make any threat or representations to O. B. Robertson that the defendant's son, O. B. Robertson, Jr., would be criminally prosecuted or indicted for taking and converting to his own use money belonging to the Shinn Grocery Company, unless the defendant would pay or secure the payment of said money to or for the use of said Shinn Grocery Company?" To which the jury answered, "No."

Issue No. 4 submitted the same inquiry as to the deed of trust. This issue was also answered, "No."

These questions presented, though not adequately, the issue of duress pleaded by appellant as a defense. The appellant excepted

to the judgment of the trial court but filed no motion for a new trial. He cannot, therefore, urge the insufficiency of the evidence to sustain the findings of the jury. Phillips Pet. Co. v. Booles (Tex. Com. App.) 276 S. W. 667. His contention here is that the evidence conclusively showed duress as a matter of law, and that he was entitled to a peremptory instruction in his favor.

The negotiations shown by the record prior to the execution of the notes, except one letter, between appellant, J. H. Robertson, and W. E. Shinn, were oral. Shinn did not testify. So far as the notes are concerned, we think there was sufficient evidence to support the jury's answer to the question submitted. Nor is it necessary to summarize that evidence here. A careful consideration of the entire record, however, compels a different conclusion with reference to the execution of the deed of trust.

■■ While the general rule is that one cannot set up duress to set aside a contract made to relieve another person and not himself, a well-defined exception to this rule exists where one acts to protect a near relative. Medearis v. Granberry, 38 Tex. Civ. App. 187, 84 S. W. 1070; Gray v. Freeman, 37 Tex. Civ. App. 556, 84 S. W. 1105, 1107; First Guaranty State Bank v. Tipton (Tex. Civ. App.) 227 S. W. 963; Borderland Hdw. Co. v. Saenz (Tex. Civ. App.) 9 S.W.(2d) 1049; 13 C. J. 404; 7 Tex. Jur. 898. And in such cases the influence exerted is usually both potent and insidious. An appeal to the parent, whether direct or indirect, by threats or innuendo, when his own offspring is involved, usually strikes human nature at a most vulnerable point. Nor are such cases to be entirely confined to those who are ignorant, and for that reason more easily imposed upon. The more intelligent the parent, usually the keener are his sensibilities to disgrace of his family; and, no matter how great his intelligence, if his fears and anxiety for his loved ones are wittingly aroused or taken advantage of by another to secure an advantage for himself, the elements of duress are just as much present in the one case as in the other. The test is what was the condition of mind of the particular maker of the instrument in question at the time he executed same. Lipsitz v. Prideaux (Tex. Civ. App.) 266 S. W. 199; 9 R. C. L. 717.

The rule is so well stated with approval in Gray v. Freeman, supra, quoting from Galusha v. Sherman, 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417, that we repeat it here: "The making of a contract requires the free exercise of the will power of the contracting parties, and the free meeting and blending of their minds. In the absence of that, the essential of a contract is wanting; and if such absence be produced by the wrongful conduct of one party to the transaction, or conduct for which he is responsible, whereby the other party for the time being, through fear, is bereft of his free will power, for the purpose of obtaining the contract, and it is thereby obtained, such contract may be avoided on the ground of duress. There is no legal standard of resistance which a party must exercise, at his peril, to protect himself. The question in each case is, was the alleged injured person, by being put in fear by the other party to the transaction for the purpose of obtaining an advantage over him, deprived of the free exercise of his will power, and was such advantage thereby obtained? If the proposition be determined in the affirmative, no matter what the nature of the threatened injury to such person or his property, or the person or liberty of his wife or child, the advantage thereby obtained cannot be retained."

Appellant was not legally liable to the Shinn Grocery Company for the shortage of his son. The record conclusively discloses, we think, that his sole purpose in the negotiations and in executing the notes in question was to prevent, if possible, the criminal prosecution of his son, and that both Shinn and J. H. Robertson knew that. While J. H. Robertson testified that he would have done all that he did do to prevent the son's indictment, whether the father had executed the notes and deed of trust or not, and that because of the family connections he and Mr. Shinn both were anxious to use all legitimate means in their power to prevent the exposure, embarrassment, and disgrace which would result from an indictment, yet, in so far as the corporation was concerned, to which the benefit accrued, and their activities in its behalf, their purpose was manifestly to prevent it from losing what the son had misappropriated, and was unable to replace. And if they, in acting for the benefit of the corporation, created a state of mind in appellant, or, by taking advantage of one known to them to exist, induced him to execute a contract for the benefit of the appellee corporation, when he was "bereft of his free will power" in the matter, then such contract is not enforceable.

■ The notes were executed on September 1, 1926. At that time appellant agreed to secure same with a deed of trust. Such agreement was not legally binding upon him. At no time could the appellee or those acting for it have enforced such agreement.

Concerning the negotiations prior to September 1, 1926, with J. H. Robertson, appellant testified:

"He said if I would go ahead and fix this matter up, there would be no prosecution.

"He said something about what would happen if I did not pay it. He said if the matter was not fixed up immediately that the next grand jury would bill the boy."

370

In response to a letter from appellant to J. H. Robertson, dated August 27, 1926, contents of which do not appear, J. H. Robertson, on August 31, 1926, wrote to appellant, in part, as follows:

"I hardly feel that we should be expected to take anything in the place of money, but as stated to you we do not want to be hard on anybody and therefore are willing to take a note with ample security which we might use in borrowing money. * * *

"I trust Mr. Robertson you will get this matter closed up right away for we are doing all in our power to keep it down, and as stated to you when talking to you the only way we can possibly refute the rumor is to have it settled."

On the following day appellant came from Gonzales to Lockhart, went to the office of the Shinn Grocery Company, was taken by Mr. Shinn and J. H. Robertson out to the fairgrounds, where the agreement to execute the note and deed of trust was made. As to this conversation, appellant testified: "I asked them, if I went ahead and fixed this matter up to their satisfaction, whether they would guarantee to me or say to me that there would be no prosecution of·the boy. They said: 'Yes, there are only a few of us that know it.' I had no doubt as to what they said, or that they could do what they said."

He executed the notes that day in the office of the Shinn Grocery Company, and testified: "I signed those notes to prevent knowledge of the act of the boy and prosecution of him,—disgrace."

J. H. Robertson testified positively that at no time did either he or Mr. Shinn ever guarantee that there would be no prosecution, nor did they ever agree not to prosecute appellant's son, but that their actions were prompted by family ties and personal sympathies; that they only meant to keep the facts from getting to the public. On cross-examination, however, he testified: "One of my duties was to collect money that was owing that firm. That was one of the duties that I was paid to do. I was interested in getting that money in. I had not only a personal interest in it, but it was my duty to do everything I could to collect that money. I was actuated somewhat in what I said and what I did by wanting to get the money. I felt it my duty to get the money back into the business."

He further testified, referring to the period between September 1, 1926, and April 1, 1927, the dates of the execution of the notes and the deed of trust: "During all that time, of course, I was seeking from time to time, that he would do it, and naturally I was calling attention to it from time to time. I worked at it, and wrote letters and did all that I could to get that deed of trust exe-

cuted. I did get it executed, just about the time the grand jury met here in March or April of 1927."

Appellant testified in this connection:

"Later on, at their demand, I did execute the deed of trust. I executed it when they said that the deed of trust would have to be executed and in Lockhart by twelve, noon, Friday before the grand jury adjourned. They said otherwise the boy would be billed. * * *

"Mr. Shinn came down to Gonzales on Thursday and told me the matter would have to be fixed up, or gotten back to Lockhart by Friday noon, before the grand jury adjourned."

On March 31st, Mr. Shinn wrote to appellant on the Shinn Grocery Company stationery, as follows:

"I hope my persistence will not be misunderstood, but I am now thoroughly convinced that nothing short of your giving deed of trust on the land will square this mess. Since coming home I talked to Judge·Richards and he told me what he had found out, and how he got his information. So I followed it up and find he is correct. It looks like holding a big stick over you, but I firmly believe that if the papers are not here before the grand jury finishes their work and pass final bills that he will be billed. I can't urge you too strong to give this your immediate attention.

"I am registering this letter to you so that there will be no likelyhood of its getting lost, and will be delivered to you.

"If possible get the papers here tomorrow's mail."

Concerning this, appellant testified:

"Up to the time I got this letter I had not signed the deed of trust. After I received the letter, I signed the deed of trust. I gave it to prevent prosecution of the boy. I understood and firmly believed at the time I executed this note and deed of trust that my boy would not be indicted. One grand jury had passed this matter up and I was firmly convinced that if it was fixed up the next grand jury would do the same thing.

"I never owed the Shinn Grocery Company a dollar; I owed none of them individually anything.

"Of course, when Mr. Robertson told me about the boy having been in this trouble over here, it hurt. It certainly worried me. I did not tell anybody about it; I did not tell my wife or any of my boys. From the time I first heard it in August until the following April, I did not tell anyone."

On the day following the letter from Mr. Shinn to appellant, Mr. Richards, an attorney at Lockhart, at the instance of Mr. Shinn, telephoned Mr. Miller, at Gonzales, Tex., attorney for, and the brother-in-law of, appel-

lant, concerning the deed of trust. Concerning this, Mr. Miller testified:

"At the time I had the conversation over the telephone with Mr. Richards, he was in Lockhart and I was in Gonzales. He rang me up on the morning of April 1st, 1927, and talked with me and said: 'Tell Mr. Robertson that things are getting mighty hot up here, that the grand jury is in session, and likely to act now or this afternoon, unless that deed of trust is sent by him and placed in the hands of Mr. Shinn,' I believe. * * *

"I completed the deed of trust and called Mr. Robertson and told him what Mr. Richards had said to me, and he called and signed it right away and acknowledged it before me, and my recollection is that I forgot to fill out the certificate of acknowledgment of a notary public."

Concerning the execution of the deed of trust, Mr. Miller also testified: "He was very nervous and excited, and was so to some extent the day before; more so, when he called and signed this deed of trust. He showed considerable excitement, but did not disclose to me what it was all about."

Richards corroborated Miller as to what he told him over the telephone.

It was known to all parties concerned from the outset that whatever settlement was made by appellant was for the benefit of the appellee corporation, and that Shinn and J. H. Robertson were acting for it in the premises.

Appellant lived in Gonzales county. His son had admitted the default. He was dealing with influential men in Caldwell county. He had made an agreement with them that inured to the benefit of appellee. J. H. Robertson testified on cross-examination: "I have admitted all the way through that it was a part and parcel of that agreement (to execute the notes and deed of trust) * * * that we would do everything we could to keep down any indictment."

■ One grand jury had met and adjourned without an indictment. J. H. Robertson was, by necessary implication we think, claiming that he and Mr. Shinn had prevented such indictment, and that, had it not been for appellant's agreement to make good to appellee his son's loss, they would not have been able to do so. A second grand jury had convened. Appellant had not given the security he promised. An indictment was again pending. J. H. Robertson and Shinn had full knowledge of his son's crime. These men then present, as the only alternative, what amounted to a demand, that appellant execute at once the promised security, or his son would be indicted. The conclusion is inescapable, we think, that these men knew that, unless the security were executed before an indictment was returned, it would never be executed, and that the officers of appellee

were knowingly taking advantage of appellant's fears and anxiety for his son to exact from him for the benefit of their company that which they could not legally demand. Whatever may have been their personal feelings, we think no reasonable conclusion can be drawn from the record as presented to us but that the advantage taken of the fears and anxieties of appellant, and of his solicitude for his son, under the circumstances of this case, in so far as the deed of trust was concerned, constituted duress as a matter of law.

■ We also sustain appellant's contention as to the illegality of the consideration. Aside from the question of duress, the only consideration shown in the negotiations and the agreement reached, pursuant to which the notes were executed, was that every effort would be made by Shinn and J. H. Robertson to "keep the matter quiet." Even according to J. H. Robertson's testimony this included keeping the matter concealed from the grand jury as well as from the public. Nowhere do we find any testimony of any other consideration for the execution of the notes. J. H. Robertson testified that after the notes and deed of trust were executed the appellee charged off whatever account it had against the son, but we find no testimony that such was a part of the agreement when the notes were executed. The whole case seems to have been tried entirely upon the issue of duress.

J. H. Robertson and Mr. Shinn may have personally entertained feelings of kindness and sympathy, but these attributes cannot be accredited to the corporation, appellee here. The son was not able to pay back to it what he had unlawfully taken. The father was under no legal obligation to do so. So far as said company was concerned, it was purely a matter of whether it would lose the $9,100. As officers, stockholders, and directors, Shinn and J. H. Robertson were affected directly by that fact. Their financial interests were therefore inseparably linked with those of the concern they operated.

■ Nor do we think there is any escape from the conclusion, under the evidence before us, that the moving consideration in the entire transaction contemplated the prevention of an indictment of O. B. Robertson, Jr., and that that consideration was thoroughly understood by appellant, Mr. Shinn, and J. H. Robertson. Such was its purport, and the record discloses an effort by all to carry it out. We do not impugn their motives, because those dear to them were involved; but such agreements are unenforceable and against public policy whether they amount to compounding an offense or not. The grand jury is an essential instrument in the enforcement of the law, and there is no distinction in principle between an effort to prevent it from functioning properly and one to pre-

vent a proper trial after an indictment is returned. Not only did the agreement in question contemplate a concealment of the facts of the defalcation from the grand jury, but obviously the use of what influence Shinn, Robertson, and the appellee, through its other officers, could exert before the grand jury to prevent an indictment after the facts had become known. Under such circumstances, the moving consideration, as shown by this record, for the execution of said notes, was illegal and against public policy. 6 R. C. L., 682, 712, 762, and numerous annotations therein; 13 C. J. 449, 453.

In view of these conclusions, we pass without discussion the other matters raised. The objections to the form of the issues presented need not occur upon another trial. The issues made can be clearly presented with proper explanations in the light of what we have said. For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.